UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSE BURGOS, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL NO. 3:CV-04-2809 |
| v. | : |
| | : (CHIEF JUDGE VANASKIE) |
| WARDEN WILLIAMSON, ET AL., | : |
| | : |
| Defendants. | : |

## MEMORANDUM AND ORDER

April 21, 2005

**I.      INTRODUCTION.**

The pro se Plaintiff, Jose Burgos, an inmate at FCI-Allenwood, White Deer, Pennsylvania, filed a federal civil rights complaint pursuant to 28 U.S.C. § 1331 on December 27, 2004. Burgos essentially challenges the validity of a New York state parole violation detainer on the ground that state and federal officials have failed to take action to resolve the detainer for more than four years. Claiming that the detainer is hindering his participation in federal Bureau of Prisons (BOP) rehabilitative programs and preventing his placement in a community corrections center for the final 6 months of his 90 month federal prison term, Burgos requests an injunction reinstating him to "parole status." Plaintiff has paid the required filing fee. Named as Defendants are the Warden of FCI-Allenwood and the New York State Division of

Parole.

Pursuant to 28 U.S.C. §1915A, this Court is required to examine an inmate complaint for legal sufficiency and to dismiss it (or any part of it) if it is frivolous, malicious or fails to state a claim on which relief may be granted. A claim may be dismissed as frivolous if it lacks an arguable basis in law or fact. Denton v. Hernandez, 504 U.S. 25 (1992). Because Burgos' complaint is both jurisdictionally and substantively defective, this action will be dismissed.

## II.         BACKGROUND.

Burgos alleges that he was sentenced to a term of life with parole as a result of a 1961 New York state court homicide conviction. (Dkt. Entry 1.) He was paroled from that sentence in 1991. He was arrested in 1998 on federal drug trafficking charges. (Id.) In 2000, Burgos was convicted and sentenced by the United States District Court for the Eastern District of Pennsylvania to a prison term of 90 months. As a result of his arrest on federal drug trafficking charges, the New York Division of Parole ("NY Division of Parole"), on December 14, 1998, issued a "Warrant for Retaking and Detaining" Burgos, which has been lodged as a parole violation detainer with the BOP. (See Dkt. 1, Exhibit A.)

In March of 2000, Burgos requested that New York officials conduct a parole revocation hearing in absentia, conceding that "[w]ith this federal prison conviction I automatically violate my New York state parole term." (Id., Exhibit "B.") The New York Parole

Board responded by stating that it would not conduct a parole revocation hearing in absentia, and that his revocation hearing would take place once he was available either in a New York State facility or a federal facility within the State of New York.  (Id., Exhibits B and C.)  Burgos then requested FCI-Allenwood officials transfer him to a federal facility in New York to resolve the New York parole violation matter so it would not interfere with his participation in BOP pre-release or rehabilitative programming opportunities, including his release to a halfway house in anticipation of his June, 2005 mandatory release date.  FCI-Allenwood officials denied his request for transfer.  (See Exhibits D and E.)

Burgos also wrote to the sentencing court, requesting a judicial recommendation that the BOP designate him to a federal facility in New York.  The request was denied on the ground that the designation and transfer of federal prisoners is within the jurisdiction of the BOP.  (See Exhibit F.)

Burgos alleges that, despite his repeated requests, no revocation hearing has been scheduled in violation of Article III of the Interstate Agreement on Detainers, 18 U.S.C. App. 2, and his Due Process rights.  He claims that the pending unresolved New York detainer effects harmful collateral consequences to his present confinement.  Plaintiff seeks an injunction reinstating him to parole status within the BOP, presumably by quashing his New York parole violation warrant/detainer due to the failure of New York officials to hold a timely parole revocation hearing.  Burgos also seeks an order directing his placement in a halfway

house in anticipation of his June 2005 mandatory release date, claiming a right to such a placement pursuant to 18 U.S.C. § 3624(c).

## III.       DISCUSSION.

Burgos has brought this matter as a civil rights action. In support of the requested injunctive relief and the form of action utilized here, Burgos relies on Pavia v. Hogan, 386 F. Supp. 1379 (N.D. Ga.1974). In Pavia, a federal inmate brought a civil action to dismiss a detainer/warrant issued by the Parole Division of the New York Department of Correctional Services which impeded his ability to participate in BOP prerelease and rehabilitative programs. Pavia, like Burgos, requested state officials to address his unresolved parole violation for the purpose of removing it as an obstacle to his participation in various BOP rehabilitative programs. Pavia, like Burgos, was denied relief for more than four (4) years. The court in Pavia, relying upon Morrissey v. Brewer, 408 U.S. 471 (1972) (holding that there is a right to a reasonably prompt parole revocation hearing when a person is in custody as a consequence of a parole violation warrant), ruled that, unless a parole revocation proceeding was conducted within 40 days, the restrictions on the plaintiff's eligibility for rehabilitative programs would be removed and "all evidence of the detainer be physically expunged from petitioner's record." Id. at 1387.

Although there are striking factual similarities between the circumstances considered in Pavia and those alleged by Burgos, reliance upon Pavia here is foreclosed by

developments in the case law that occurred after the Pavia decision was entered. The case law governing the outcome of the present matter precludes relief both because the form of action is incorrect and because the failure to provide a parole revocation hearing offends neither the Due Process Clause nor the Interstate Agreement on Detainers.

First, as to the form of action, our Court of Appeals ruled in 1983 that an action seeking to invalidate a state detainer on the basis of an asserted violation of the Interstate Agreement on Detainers may not be pursued in a civil rights action, but must instead be brought as a habeas corpus proceeding under 28 U.S.C. § 2254. See Mokone v. Fenton, 710 F.2d 998, 1002 (3d Cir. 1983). A habeas corpus proceeding under 28 U.S.C. § 2254 may be maintained only after exhaustion of available state court remedies. Id. at 1002-03. There is no indication that Burgos pursued any state court challenge to the decision of New York parole authorities to defer the parole revocation hearing until Burgos is present in New York. Accordingly, dismissal of this action is warranted. See Veneri v. Missouri, 734 F.2d 391, 392-93 (8th Cir. 1984) (affirming dismissal of action seeking injunctive relief to remove parole violation detainer because the claim is cognizable exclusively under 28 U.S.C. § 2254 and the prisoner had not exhausted available state court remedies).

Even if Burgos' claims could be brought in a Bivens action, his reliance upon Pavia is undermined by extant controlling precedent. First, subsequent to Pavia, the Court ruled that a parolee serving a prison term for a crime committed while on parole was not entitled

-5-

to a prompt parole revocation hearing when the parole violator warrant was issued and lodged with the institution of confinement, but not executed.  See Moody v. Daggett, 429 U.S. 78, 87-89 (1976).  Specifically, the Court ruled that a prisoner "has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant," and that parole authorities have "no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant."  Id. at 89.  In reaching this result, the Court ruled that any alleged adverse impact on "eligibility for rehabilitative programs in the federal system" did not trigger due process safeguards because the inmate "has no legitimate statutory or constitutional entitlement" to participation in such programs.  Id. at 88 n.9.  In this regard, it bears observation that the statute authorizing placement in a community corrections center for the final few months of a prison term, 18 U.S.C. § 3624(c), does not create a protected liberty interest in such placement.  See Gambino v. Gerlinski, 96 F. Supp. 2d 456, 459-60 (M.D. Pa.), aff'd, 216 F.3d 1075 (3d Cir. 2000) (unpublished table opinion).

      Burgos fairs no better under the Interstate Agreement on Detainers.  The Court has specifically ruled that Article III of the Interstate Agreement on Detainers concerns only criminal charges pending against a prisoner, and does not extend to probation or parole violation detainers.  See Carchman v. Nash, 473 U.S. 716, 727-29 (1985).  Thus, dismissal of the claim asserting a violation of the Interstate Agreement on Detainers is warranted.  See Johnson v. Pennsylvania Board of Probation and Parole, Civ.A. No. 87-2946, 1987 WL 11478,

at *1 (E.D. Pa. May 26, 1987) (dismissing as frivolous civil rights action seeking to invalidate a parole violation detainer because "[a] parole violation detainer does not come within the provisions of the Interstate Agreement on Detainers and thus an immediate parole revocation hearing is not required").

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1. This action is **DISMISSED**.

2. All motions pending in this case are **DENIED AS MOOT**.

3. The Clerk of Court is directed to mark this matter **CLOSED**.

4. Any appeal from this Order is deemed frivolous, lacking in probable cause, and not taken in good faith.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania